IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                Plaintiff,<br><br>vs.<br><br>JACOB A. BRUN,<br><br>                Defendant. | 8:20CR0038<br><br>BRIEF IN RESPONSE TO DEFENDANT'S MOTION TO SUPPRESS |

COMES NOW the Plaintiff, United States of America, by and through the undersigned Assistant United States Attorney, and responds to the Defendant's Motion to Suppress (Filing No. 41), and respectfully asks this Court to deny the motion in its entirety.

## INTRODUCTION

Defendant Jacob Brun alleged that the search of his residence pursuant to the terms of his probation should be suppressed because there was a "stalking horse" issue created when probation officers requested the assistance of Douglas County Sheriff's Office (DCSO) investigators in the search, because the terms of his probation search condition did not authorize the search and due to lack of probable cause to search. Brun further alleged that the search exceeded the scope of an authorized search for probation violations. Brun was on probation for a controlled substance violation and had two outstanding warrants, one felony and one misdemeanor, on the day of the search.

Brun's motion should be denied in its entirety because the Eighth Circuit has already ruled that there can be no stalking horse violation when a defendant is on probation and probation searches his residence with the assistance of law enforcement. See *United States v. Brown*, 346 F.3d 808, 810 (8th Cir. 2003). Brun made no effort to distinguish himself from this precedent and incorrectly relied on decades-old precedent that is overruled by the current case law. See *United*

*States v. Knights*, 534 U.S. 112 (2001) and *United States v. Brown*, 346 F.3d 808, 810 (8th Cir. 2003). Brun challenged the search under probable cause standards, but the Supreme Court in *Knights* established a reasonable suspicion standard for warrantless searches of a probationer's residence and that is comfortably satisfied on the present facts. *Knights* 534 U.S. 112 at 121-122. Brun did not provide the complete language of the search condition of his Probation order, or the accurate classification of his outstanding warrants for his Probation violation. The Probation condition expressly authorized searches by law enforcement and by probation. (Ex. 4, p. 1). Because these facts are entirely controlled by Eighth Circuit precedent, which relied on Supreme Court rulings, Brun's motion must be denied under case precedent.

## FACTS

On December 19, 2019, Brun drove his personal vehicle, a Honda Accord, into the side of a Federal Bureau of Investigation (FBI) Sports Utility Vehicle (SUV) assigned to and driven by Task Force Officer Austin Pratt. Task Force Officer Pratt and other officers and deputies from the Douglas County Sheriff's Office were attempting to take Brun into custody on his outstanding warrants. Brun, upon seeing the marked units approaching his vehicle, began to drive in reverse down the residential street to attempt to evade arrest. (Ex. 1). As Brun evaded multiple law enforcement officers in their vehicles, the officers and deputies began to position their vehicles in a manner that would limit his routes of escape in an attempt to force him to stop evading arrest and to prevent a high-speed pursuit. (Ex. 1; Ex. 2, p. 5).

Task Force Officer Pratt, who was investigating Brun for a federal narcotics investigation and will testify at the hearing, positioned his vehicle out in front of Brun's vehicle where Brun had a full opportunity to observe Officer Pratt's FBI vehicle and either come to a stop or drive in a different direction. (Ex. 2, p. 9) There were three other people in Brun's vehicle with him, and one passenger told officers and deputies later that he told Brun to stop and not to drive into Officer

2

Pratt's vehicle. (Ex. 2, p. 10). Instead, Brun ignored the warnings and drove straight ahead into Officer Pratt's vehicle, pinning the driver's side door shut with his vehicle. (Ex. 2, pp. 5, 9; Ex 3). A deputy at the scene observed Brun accelerate his vehicle before driving into Officer Pratt's SUV. (Ex. 2, p. 5).

Officer Pratt, while pinned into his vehicle, could see Brun moving his hands toward the waistband of his pants after he pinned Officer Pratt in his vehicle. Fearing Brun was about to draw a weapon on him and potentially fire a weapon at him, Officer Pratt drew his weapon and pointed it at Brun, ready to defend himself if necessary. (Ex. 2, p. 9 and Expected Testimony).

Meanwhile, deputies and narcotics investigators with the Douglas County Sheriff's Office (DCSO), exited their respective vehicles and surrounded Brun in his vehicle. (Ex. 2, p. 9). They gave repeated verbal commands for Brun to get out of his vehicle, but he ignored their verbal commands. (Ex. 2, p. 9). Because deputies were also unsure of whether Brun was armed and dangerous, and because he was refusing to comply with their demands to put his hands up and get out of the vehicle, they began to break out the windows of the vehicle with batons in order to remove Brun from the vehicle themselves. (Ex. 2, p. 9; Ex. 3).

Once Brun was out of the vehicle, deputies located a black handgun under the seat where Brun was seated. (Ex. 3). This gun had been reported stolen. (Ex. 2, p. 10). Passengers in the vehicle told deputies that Brun was trying to hide the gun after he drove his vehicle into Officer Pratt. (Ex. 2, p. 10). The front seat passenger saw him remove the weapon from his waistband. (Ex. 2, p. 10). This is also where Officer Pratt saw Brun's hands right after he drove his vehicle into him, and he will testify concerning those facts.

The front seat passenger told deputies and investigators at the scene that when she was in the vehicle with Brun, she perceived Brun as going to either point the gun at the officer or use it

to get away on his warrants. (Ex. 2, p. 10). She stated that she thought Brun might shoot at the officers, and she will be questioned prior to trial concerning what gave her that impression. (Ex. 2, p. 10). The backseat passenger stated that he told Brun not to hit the officer's Jeep (SUV), but that Brun drove into it anyway and then later hid the gun under his seat before law enforcement took Brun into custody. (Ex. 2, p. 10).

In addition to having outstanding warrants at the time of his arrest on December 19, 2019, Brun was also on felony probation for possession of a controlled substance. (Ex. 4, p 5). The terms of his probation order made him subject to inspection and search of his residence by his probation officer and by **law enforcement officers** (Emphasis Added):

> 3. Report as directed by the Court or probation officer and permit the probation officer to visit the defendant at all times and places. The Defendant is to submit to reasonable search and seizures of his person, home, and vehicle by all law enforcement and probation officers.

(Ex. 4, p. 1).

Brun formally acknowledged and accepted his probation conditions with the following statement:

> I received a copy of this probation sentence on November 1, 2018; I have read and understand its conditions. I further understand that any violation of the above conditions is cause for revocation of probation and a possible sentence to confinement. I do hereby waive extradition to the State of Nebraska in the event a charge of violation of probation is filed if, at the time of my apprehension, I am in another state. In the event probation supervision is transferred to another state, I do hereby agree to abide by additional rules and conditions that may be imposed by the receiving state.
>
> _____
> Defendant

(Ex. 4, p. 3).

Brun failed to appear for his hearing on his alleged probation violation, and that led to one of the warrants that DSCO was executing with the Douglas County Probation Office on December

4

19, 2019. (Ex. 5). This was also a separate violation of his probation that triggered a felony arrest warrant, not a misdemeanor warrant. (Ex. 5).

Task Force Officer Pratt will testify that Probation requested assistance with getting Brun into custody and that Probation officers were at the scene where Brun evaded and drove his vehicle into a Task Force Officer's SUV. DCSO investigators and officers informed the Probation officers that Brun was also in possession of a firearm at the scene. DCSO had also been tipped off by a confidential informant that Brun was distributing methamphetamine. Probation officers decided to search the residence, with the aid and assistance of DCSO investigators and officers, as contemplated by Brun's search condition. (Ex. 4, p. 1; Ex. 2, p. 13). Brun was leaving his residence when investigators and officers attempted to arrest him on the warrants, so his arrest occurred a short distance from the residence. (Ex. 2, pp. 5, 9).

The search of the residence revealed a sawed-off shotgun under the couch in the living room of his residence, and methamphetamine and other substances, that would later be confirmed by a crime lab to be additional controlled substances, were recovered from Brun's bedroom and from the personal belongings of his girlfriend at the time, Nicole Corcoran. Ammunition that was the same caliber as the gun that Brun had on him in the vehicle was also located in the living room where the loaded sawed-off shotgun was recovered.

Corcoran gave a statement to narcotics investigators that Brun had been distributing methamphetamine to her in the months leading up to this incident and that Brun was becoming increasingly paranoid with his methamphetamine use. Corcoran described foot traffic to the residence consistent with narcotics distribution in Task Force Officer Pratt's training and experience.

On December 19, 2019, Task Force Officer Pratt was investigating Brun for distributing methamphetamine in violation of federal law as part of his official duties that day. He sought to take Brun into custody on his outstanding warrants and then to question him concerning his methamphetamine possession and distribution. He will testify to those facts at the hearing in this matter.

Brun was initially charged in state court with six charges. Brun remained in state custody until he was charged in federal court, at which time his state charges were dismissed.

On January 23, 2020, the Grand Jury for the District of Nebraska found probable cause to indict Brun for three violations of Title 18 of the United States Code. The first two charges are as follows for the initial indictment:

### COUNT I

On or about December 19, 2019, in the District of Nebraska, JACOB A. BRUN, defendant herein, did knowingly and feloniously assault, resist, oppose, impede, intimidate, and interfere with Victim 1, a Task Force Officer with the Federal Bureau of Investigation, while Victim 1 was engaged in the performance of his official duties. It is further alleged that the defendant did the act or acts with a deadly or dangerous weapon.

In violation of Title 18, United States Code, Section 111(a)(1) and (b).

### COUNT II

On or about December 19, 2019, in the District of Nebraska, JACOB A. BRUN, defendant herein, did knowingly use, and carry, a .380 caliber Taurus handgun, in furtherance of a crime of violence for which they may be prosecuted in a court of the United States, that is, assault with a deadly weapon on a federal officer, in violation of Title 18, United States Code, Section 111(a)(1) and (b).

All in violation of Title 18, United States Code, Section 924(c)(1)(A).

The third count alleged felon in possession of a firearm and specified that the firearm was the stolen Taurus handgun. This is the same weapon recovered from Brun's vehicle. (Filing No. 1).

The substances seized from the residence were identified by lab forensics experts, and the shotgun was examined to determine whether the length of the barrel would take it down to a "short shotgun" for purposes of the federal criminal code. It was just longer than that length. That additional investigation was completed, and the grand jury alleged three more violations of the criminal code in a Superseding Indictment for the identified controlled substances and possession of the shotgun at Brun's location of drug distribution and possession. (Filing No. 24).

## STATEMENT OF THE LAW

When a probationer is subject to a search term or conditions, a warrantless search of a probationer's house requires no more than reasonable suspicion to conduct the search because a probationer has a "significantly diminished privacy interest." *United States v. Knights*, 534 U.S. 112, 121–22 (2001). The reasonableness of a search is determined "by assessing, on the one hand, the degree to which it intrudes upon an individual's privacy and, on the other, the degree to which it is needed for the promotion of legitimate governmental interests." *Wyoming v. Houghton*, 526 U.S. 295, 300 (1999). The Supreme Court held in *Knights* that a defendant's status as a probationer subject to a search condition informs both sides of the balancing test because probation is a form of criminal sanction with a continuum of possible punishments that justify curtailing their individual freedoms, in contrast with free and law-abiding citizens who enjoy an "absolute liberty." *Knights*, 534 U.S. 112 at 118–19. The general approach to examining Fourth Amendment search challenges is "examining the totality of the circumstances," *Ohio v. Robinette*, 519 U.S. 33, 39 (1996).

The Eighth Circuit, in the wake of the ruling in *Knights*, holds that probation officers working with law enforcement and task force officers cannot be "stalking horses" for probationary searches of residences. *United States v. Brown*, 346 F.3d 808, 810 (8th Cir. 2003). The Eighth Circuit, in applying *Knights* to *Brown's* case, determined that probationary searches are not subject

to the official purpose analysis of other Fourth Amendment claims but instead should be analyzed under the traditional Fourth Amendment balancing test. *Id*. at 811. The Defendant here tried to resurrect that same rejected argument from *Brown*, but it is not the law in the Eighth Circuit. The Eighth Circuit in *Brown* traced the procedural history of *Knights* and noted that the Supreme Court overturned the Ninth Circuit Court of Appeals for applying the official purpose test to a probationary search of a residence pursuant to a search condition of Knights' probation, ruling instead that a balancing test is the method for analyzing these Fourth Amendment claims and that a person's status as a probationer informs both sides of the balancing. *Id*.

Specifically, the Eighth Circuit in *Brown*, following the Supreme Court's analysis in *Knights*, held that a probationer's status on probation with a search condition diminished the individual privacy interest and expectation of privacy on that side of the balancing test. The Eighth Circuit further held that the government's legitimate interest was increased on the other side of the balancing test because the "'very assumption of the institution of probation' is that the probationer 'is more likely than the ordinary citizen to violate the law,'" (*quoting Griffin v. Wisconsin*, 483 U.S. 868, 880 (1987)). *Id*. The Eighth Circuit then went one step further and concluded that the Supreme Court in *Knights* held and intended that stalking horse and official purpose analysis, along with any claims about the actual motivations of probation officers, are not to be applied to these types of searches. *Id*. at 812.

## ARGUMENT

    A.    <u>Brun had a diminished expectation of privacy due to his status on probation and conditions of his probation, resulting in a reasonable suspicion standard for his probation officer's warrantless search.</u>

Defendants in the Eighth Circuit, like Brun, who have a search provision in their conditions of probation have a diminished expectation of privacy in their residences. The Supreme Court in *Knights* in reaching their holding on a diminished privacy interest for probationers, reasoned that Knights' original sentencing judge determined that it was a necessary condition for his probation; that the search condition furthered the legitimate goals of probation-rehabilitation and protection of society; that Knights was unambiguously informed it and the order clearly expressed it. *Knights,* 534 U.S. 112 at 119-29. All of the same rationales are present in Brun's case. The probation order provided in the Index to this brief clearly stated the search condition for Brun's probation and that it applied to both probation and law enforcement. Brun signed and acknowledged the conditions, and his sentencing judge appropriately made it a condition of his probation for possession of a controlled substance. Brun did not have the absolute liberty and reasonable expectation of privacy enjoyed by law abiding citizens on December 19, 2019. He, like the *Knights* Defendant, had a lesser privacy interest for the purpose of the balancing test.

    Brun is also like the Defendant in *Brown*. The Eighth Circuit examined Brown's probation condition and the facts his probation officers acted on when searching his residence. Brown's probation condition was distinguished from Knights in that Knights' condition, like Brun's, specified that the search condition extended to law enforcement officers. *Brown,* 346 F.3d at 812. The Eighth Circuit still concluded that the probation officer's request to have drug task force agents join the probation search did not violate the scope of Brown's search condition. *Id*. Here, there is even less reason to consider suppressing the search than in *Brown* because Brun's search condition is identical to Knights' in that regard. Brown was also subject to a reasonable suspicion standard

9

for searches, like Brun. Brun had a diminished privacy interest, and the fact that the probation officers were accompanied by DCSO investigators is expressly within the scope of the search condition of Brun's probation. His probation officer need only have had reasonable suspicion that Brun was violating the terms of his probation, which also prohibited use and possession of controlled substances. (Ex. 4).

> B. Any intrusion of Brun's privacy was outweighed by legitimate government interests and justified by reasonable suspicion that Brun was violating the terms of his probation.

Brun's challenges to the search of his residence based on the presence of law enforcement officers must fail entirely in the Eighth Circuit. The Eighth Circuit in *Brown* found and reasoned that probation officers are "neither designed nor staffed to conduct these types of searches alone," and that law enforcement officer provide protection and are equipped to take contraband into custody. *Brown*, 346 F.3d at 812. The Eighth Circuit then decided,

> "We hold the governmental interest in ensuring probation officer safety outweighs any marginal, additional intrusion into Brown's privacy resulting from the task force agents' presence. In short, when a probationary condition authorizes searches by probation officers, the Fourth Amendment does not require probation officers to choose between endangering themselves by searching alone and foregoing the search because they lacked the resources and expertise necessary to search alone safely. Thus, the Knights balance does not change and the government can prevail if Allison had a reasonable suspicion that Brown was violating the terms of his probation."

*Id.* Brun cannot distinguish himself from this precedent and made no attempt to do so in his motion.

Brun already had warrants based on probable cause findings that he was in violation of the terms of his probation on December 19, 2019, and that fact alone would have justified his probation officer's decision to search his residence. To further strengthen the reasonable suspicion in Brun's case, his probation officer was aware that there was an investigation into his narcotics distribution

10

and that after failing to appear on his first probation violation, he evaded and resisted arrest before driving his vehicle into a Task Force Officer's vehicle and that a handgun was recovered from his vehicle that passengers alleged belonged to Brun. Brun alleged that the search of his residence exceeded the scope of his conditions in that locations within the home were searched beyond those where a probation violation could be found. Brun was suspected of narcotics distribution and was on probation for controlled substance possession. No location was searched beyond a location where evidence of drug distribution or illegal weapon possession would be found. Brun has offered no facts, arguments, or legal precedent that would outweigh the legitimate and judicially recognized government interests involved in the search of his residence. It was comfortably supported on reasonable suspicion standards. Brun, like *Brown* and *Knights* before him, cannot prevail on his claims and his motion must be denied.

## CONCLUSION

Brun relied on outdated case law for all of his claims, and the current case law standards leave him with no grounds for his claims. He had a diminished privacy interest as a defendant on probation. This lowers the standard for warrantless searches of his residence to a reasonable suspicion standard. He had outstanding warrants, evaded law enforcement, and was found in possession of contraband immediately before the search. Under the legal precedent provided, he cannot prevail on a motion to suppress a search in those circumstances. His probation condition and the circumstances of the search are entirely in keeping with searches that have been upheld already by the Eighth Circuit and the Supreme Court. For these reasons, the United States respectfully requests that his motion be denied in its entirety.

DATED this 18th day of September, 2020.

        Respectfully submitted,

        UNITED STATES OF AMERICA,

        JOSEPH P. KELLY
        United States Attorney
        District of Nebraska

By:   s/ *Lesley Woods*
      LESLEY WOODS, TX #24092092
      Assistant United States Attorney
      1620 Dodge St., Suite 1400
      Omaha, NE 68102
      402-661-3700
      lesley.woods@usdoj.gov

## CERTIFICATE OF SERVICE

    I hereby certify that on September 18, 2020, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which sent notification of such filing to all registered participants. I also hereby certify that a copy of the same was served by regular mail, postage prepaid, to the following non-CM/ECF participants: None.

        *s/ Lesley Woods*
        Assistant U.S. Attorney