IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>JACOB A. BRUN,<br><br>Defendant. | 8:20CR0038<br><br>BRIEF IN RESPONSE TO DEFENDANT'S MOTION TO SEVER |

COMES NOW the Plaintiff, United States of America, by and through the undersigned Assistant United States Attorney, and responds to the Defendant's Motion to Sever (Filing No. 44), and respectfully asks this Court to deny the motion in its entirety.

**INTRODUCTION**

Defendant Jacob Brun alleged that Counts I and II should be severed from Counts III through V because the offenses were improperly joined under Rule 8(a) and severely prejudice Brun's chances of an acquittal under Rule 14. Brun cannot meet his heavy burden of demonstrating severe prejudice because the evidence for Counts I and II would be admissible at trial on Counts III through V. For example, Brun's choice to evade and resist arrest under Count I, which concluded with Brun assaulting a TFO by driving his vehicle into the TFO's vehicle, is evidence of a guilty conscience for all of the charged offenses. The offenses were properly joined under Rule 8(a), and the law favors joinder. Brun's motion should be denied outright.

**FACTS**

On December 19, 2019, Brun drove his personal vehicle, a Honda Accord, into the side of a Federal Bureau of Investigation (FBI) Sports Utility Vehicle (SUV) assigned to and driven by Task Force Officer Austin Pratt. Task Force Officer Pratt and other officers and deputies from the Douglas County Sheriff's Office were attempting to take Brun into custody on his outstanding

warrants. Brun, upon seeing the marked units approaching his vehicle, began to drive in reverse down the residential street to attempt to evade arrest. (Ex. 1). As Brun evaded multiple law enforcement officers in their vehicles, the officers and deputies began to position their vehicles in a manner that would limit his routes of escape in an attempt to force him to stop evading arrest and to prevent a high-speed pursuit. (Ex. 1; Ex. 2, p. 5).

Task Force Officer Pratt, who was investigating Brun for a federal narcotics investigation and will testify at the hearing, positioned his vehicle out in front of Brun's vehicle where Brun had a full opportunity to observe Officer Pratt's FBI vehicle and either come to a stop or drive in a different direction. (Ex. 2, p. 9) There were three other people in Brun's vehicle with him, and one passenger told officers and deputies later that he told Brun to stop and not to drive into Officer Pratt's vehicle. (Ex. 2, p. 10). Instead, Brun ignored the warnings and drove straight ahead into Officer Pratt's vehicle, pinning the driver's side door shut with his vehicle. (Ex. 2, pp. 5, 9; Ex 3). A deputy at the scene observed Brun accelerate his vehicle before driving into Officer Pratt's SUV. (Ex. 2, p. 5).

Officer Pratt, while pinned into his vehicle, could see Brun moving his hands toward the waistband of his pants after he pinned Officer Pratt in his vehicle. Fearing Brun was about to draw a weapon on him and potentially fire a weapon at him, Officer Pratt drew his weapon and pointed it at Brun, ready to defend himself if necessary. (Ex. 2, p. 9 and Expected Testimony).

Meanwhile, deputies and narcotics investigators with the Douglas County Sheriff's Office (DCSO), exited their respective vehicles and surrounded Brun in his vehicle. (Ex. 2, p. 9). They gave repeated verbal commands for Brun to get out of his vehicle, but he ignored their verbal commands. (Ex. 2, p. 9). Because deputies were also unsure of whether Brun was armed and dangerous, and because he was refusing to comply with their demands to put his hands up and get

out of the vehicle, they began to break out the windows of the vehicle with batons in order to remove Brun from the vehicle themselves. (Ex. 2, p. 9; Ex. 3).

Once Brun was out of the vehicle, deputies located a black handgun under the seat where Brun was seated. (Ex. 3). This gun had been reported stolen. (Ex. 2, p. 10). Passengers in the vehicle told deputies that Brun was trying to hide the gun after he drove his vehicle into Officer Pratt. (Ex. 2, p. 10). The front seat passenger saw him remove the weapon from his waistband. (Ex. 2, p. 10). This is also where Officer Pratt saw Brun's hands right after he drove his vehicle into him, and he will testify concerning those facts.

The front seat passenger told deputies and investigators at the scene that when she was in the vehicle with Brun, she perceived Brun as going to either point the gun at the officer or use it to get away on his warrants. (Ex. 2, p. 10). She stated that she thought Brun might shoot at the officers, and she will be questioned prior to trial concerning what gave her that impression. (Ex. 2, p. 10). The backseat passenger stated that he told Brun not to hit the officer's Jeep (SUV), but that Brun drove into it anyway and then later hid the gun under his seat before law enforcement took Brun into custody. (Ex. 2, p. 10).

In addition to having outstanding warrants at the time of his arrest on December 19, 2019, Brun was also on felony probation for possession of a controlled substance. (Ex. 4, p 5). The terms of his probation order made him subject to inspection and search of his residence by his probation officer and by **law enforcement officers** (Emphasis Added):

> 3. Report as directed by the Court or probation officer and permit the probation officer to visit the defendant at all times and places. The Defendant is to submit to reasonable search and seizures of his person, home, and vehicle by all law enforcement and probation officers.

(Ex. 4, p. 1).

Brun formally acknowledged and accepted his probation conditions with the following statement:

> I received a copy of this probation sentence on November 1, 2018; I have read and understand its conditions. I further understand that any violation of the above conditions is cause for revocation of probation and a possible sentence to confinement. I do hereby waive extradition to the State of Nebraska in the event a charge of violation of probation is filed if, at the time of my apprehension, I am in another state. In the event probation supervision is transferred to another state, I do hereby agree to abide by additional rules and conditions that may be imposed by the receiving state.
>
> Defendant

(Ex. 4, p. 3).

Brun failed to appear for his hearing on his alleged probation violation, and that led to one of the warrants that DSCO was executing with the Douglas County Probation Office on December 19, 2019. (Ex. 5). This was also a separate violation of his probation that triggered a felony arrest warrant, not a misdemeanor warrant. (Ex. 5).

Task Force Officer Pratt will testify that Probation requested assistance with getting Brun into custody and that Probation officers were at the scene where Brun evaded and drove his vehicle into a Task Force Officer's SUV. DCSO investigators and officers informed the Probation officers that Brun was also in possession of a firearm at the scene. DCSO had also been tipped off by a confidential informant that Brun was distributing methamphetamine. Probation officers decided to search the residence, with the aid and assistance of DCSO investigators and officers, as contemplated by Brun's search condition. (Ex. 4, p. 1; Ex. 2, p. 13). Brun was leaving his residence when investigators and officers attempted to arrest him on the warrants, so his arrest occurred a short distance from the residence. (Ex. 2, pp. 5, 9).

The search of the residence revealed a sawed-off shotgun under the couch in the living room of his residence, and methamphetamine and other substances, that would later be confirmed by a crime lab to be additional controlled substances, were recovered from Brun's bedroom and from the personal belongings of his girlfriend at the time, Nicole Corcoran. Ammunition that was the same caliber as the gun that Brun had on him in the vehicle was also located in the living room where the loaded sawed-off shotgun was recovered.

Corcoran gave a statement to narcotics investigators that Brun had been distributing methamphetamine to her in the months leading up to this incident and that Brun was becoming increasingly paranoid with his methamphetamine use. Corcoran described foot traffic to the residence consistent with narcotics distribution in Task Force Officer Pratt's training and experience.

On December 19, 2019, Task Force Officer Pratt was investigating Brun for distributing methamphetamine in violation of federal law as part of his official duties that day. He sought to take Brun into custody on his outstanding warrants and then to question him concerning his methamphetamine possession and distribution. He will testify to those facts at the hearing in this matter.

Brun was initially charged in state court with six charges. Brun remained in state custody until he was charged in federal court, at which time his state charges were dismissed.

On January 23, 2020, the Grand Jury for the District of Nebraska found probable cause to indict Brun for three violations of Title 18 of the United States Code. The first two charges are as follows for the initial indictment:

COUNT I

> On or about December 19, 2019, in the District of Nebraska, JACOB A. BRUN, defendant herein, did knowingly and feloniously assault, resist, oppose, impede, intimidate, and interfere with Victim 1, a Task Force Officer with the Federal Bureau of Investigation, while Victim 1 was engaged in the performance of his official duties. It is further alleged that the defendant did the act or acts with a deadly or dangerous weapon.
>
> In violation of Title 18, United States Code, Section 111(a)(1) and (b).

COUNT II

> On or about December 19, 2019, in the District of Nebraska, JACOB A. BRUN, defendant herein, did knowingly use, and carry, a .380 caliber Taurus handgun, in furtherance of a crime of violence for which they may be prosecuted in a court of the United States, that is, assault with a deadly weapon on a federal officer, in violation of Title 18, United States Code, Section 111(a)(1) and (b).
>
> All in violation of Title 18, United States Code, Section 924(c)(1)(A).

The third count alleged felon in possession of a firearm and specified that the firearm was the stolen Taurus handgun. This is the same weapon recovered from Brun's vehicle. (Filing No. 1).

The substances seized from the residence were identified by lab forensics experts, and the shotgun was examined to determine whether the length of the barrel would take it down to a "short shotgun" for purposes of the federal criminal code. It was just longer than that length. That additional investigation was completed, and the grand jury alleged three more violations of the criminal code in a Superseding Indictment for the identified controlled substances and possession of the shotgun at Brun's location of drug distribution and possession. (Filing No. 24).

## STATEMENT OF LAW

### A. Challenges to Joinder of Offenses Under Rule 8(a)

Under Rule 8, multiple counts can be charged in a single indictment as long as the offenses are (1) of the same or similar character; (2) based on the same act or transaction; or (3) constitute

parts of a common scheme or plan. Fed.R.Crim.P. 8(a); *United States v. Kirk*, 528 F.3d 1102, 1107 (8th Cir. 2008). "The rules are to be liberally construed in favor of joinder." *United States v. Ruiz*, 412 F.3d 871, 886 (8th Cir. 2005).

B. "Same or Similar Character" Offenses

The Eighth Circuit, in evaluating claims that the offenses are of a same or similar character, has found that joinder of offenses is proper when "the two counts refer to the same type of offenses occurring over a relatively short period of time, and the evidence as to each count overlaps." *United States v. Robaina*, 39 F.3d 858, 861 (8th Cir. 1994) (citations and quotations omitted). In determining whether the offenses occurred over a relatively short period of time, the Eighth Circuit has already approved joinder of offenses spaced out over seventeen months, twenty months, and two years. *See United States v. Lindsey*, 782 F.2d 116, 117 (8th Cir. 1986); *United States v. Rodgers*, 732 F.2d 625, 629 (8th Cir. 1984); and *United States v. Hastings*, 577 F.2d 38, 40 (8th Cir. 1978). In considering whether the evidence is overlapping, the Eighth Circuit has considered such factors as whether the offenses were predicated on the same type of felony and whether evidence of each offense would have been admissible under Rule 404(b) to prove the other offense in separate trials. *United States v. Garrett*, 648 F.3d 618, 625 (8th Cir. 2011).

C. Same Act or Transaction and Common Scheme or Plan

Charges are properly joined in the Eighth Circuit when they arise from the same act. *United States v. Colbert*, 828 F.3d 718, 728 (8th Cir. 2016). When two offenses have a logical and temporal relationship with each other, that can demonstrate that they are part of a common plan or scheme. *United States v. Johnson*, 462 F.3d 815, 822 (8th Cir. 2006). *See also United States v. Midkiff*, 614 F.3d 431, 439 (8th Cir. 2010).

D. Challenges to Joinder Based on Severe Prejudice Claims

"Severe prejudice occurs when a defendant is deprived of an appreciable chance for an acquittal, a chance that [the defendant] would have had in a severed trial." *United States v. Koskela*, 86 F.3d 122, 126 (8th Cir. 1996) (citation omitted). "[T]here is a strong presumption against severing properly joined counts." *United States v. McCarther*, 596 F.3d 438, 442 (8th Cir. 2010) (citation omitted). The defendant bears the burden of establishing prejudice. *United States v. Humphreys*, 982 F.2d 254, 259 (8th Cir. 1992) (emphasis added). Prejudice does not result if evidence of one charge would have been admissible in the trial of the other. *United States v. Taken Alive*, 513 F.3d 899, 903 (8th Cir. 2008). *See also, United States v. Reynolds*, 720 F.3d 665, 669 (8th Cir. 2013). Evidence of unlawful firearm possession on one occasion is admissible to show a Defendant possessed a firearm on another occasion. *See United States v. Walker*, 470 F.3d 1271, 1274 (8th Cir. 2006) ("Evidence that a defendant possessed a firearm on a previous occasion is relevant to show knowledge and intent."); *Taken Alive*, 513 F.3d at 903 (concluding severance of two charges, for assaults that occurred approximately one month apart, was not required because evidence of one assault could be used to show the "absence of mistake or accident or to show intent" of the other assault).

E. Felon in Possession Precedent in the Eighth Circuit

The Defendant in *Rock* unsuccessfully challenged the joinder of a felon-in-possession charge with a witness tampering charge and the admission of evidence that he committed an uncharged burglary. *United States v. Rock*, 282 F.3d 548, 550 (8th Cir. 2002).

The Eighth Circuit in *Rock* agreed with the District Court that the charges were properly joined because they were factually interrelated and the acts or transactions occurred together or were part of a common scheme or plan under Rule 8(a). *Rock*, 282 F.3d at 552. Rock unsuccessfully argued that he was severely prejudiced because at a trial on the witness tampering,

the evidence that he was a felon and participated in an uncharged burglary would not be admissible. *Id*. As the Eighth Circuit noted, in "numerous" prior cases, it has upheld refusals to sever felon-in-possession counts absent clear showings of prejudice in reliance on *United States v. Kind*, 194 F.3d 900, 906 (8th Cir. 1999), and cases cited therein, with *United States v. Aldrich*, 169 F.3d 526, 528 (8th Cir. 1999). Rock's prejudice claim failed because evidence of the two charges would have been admissible in separate trials on the offenses and noted that the parties stipulated to his status as a felon to limit the prejudice. *Rock*, 282 F.3d at 552.

**ARGUMENT**

A. The Evidence from Count I through V is of a Same or Similar Character.

These offenses occurred together, on the same day, and the offenses are of a same or similar character under case law standards of measurement. Firearms are tools of the drug trade, and drug distributors often possess the firearms to protect their stash of narcotics and currency from sales. There was a firearm at the residence and on Brun's person at the time of arrest, and the firearm on his person at arrest was a significant contributor to his decision to evade law enforcement and assault Task Force Officer Pratt by driving a vehicle into the side of the Task Force Officer's SUV. It was recovered at the scene of the assault and the passengers in the vehicle will testify about the firearm and the assault almost in the same breath because they are so overlapping and interrelated. The officers were present to take Brun into custody on his probation violation, so his status as a felon is also inextricably intertwined and overlapping with the other evidence.

The evidence of each offense would be admissible in a trial for the other offense on various grounds. Brun was on probation for controlled substance offenses, and he failed to appear and had warrants outstanding for his arrest on December 19, 2019. In possession of an illegal weapon and with controlled substances and another illegal firearm back at his residence, he decided to evade marked units with their lights and sirens activated in their pursuit of him. When officers and

investigators closed in on him in their vehicles, Brun decided to drive his vehicle into Task Force Officer Pratt's vehicle to buy himself time to hide his weapon. The assault on an officer evidence is evidence of Brun's guilty conscience about the firearm possession and proof that he knew he was not supposed to be possessing a firearm as a felon. It is also a reasonable inference for the United States to make at trial that that Brun knew he was in possession of other contraband at his residence as well, and that he was trying to flee that area. This is not the only evidence that would be admissible in both trials and completely overlaps and occurs contemporaneously for Rule 8(a) purposes.

Brun's prior drug conviction will be admissible to show his knowledge of the controlled substances recovered from his residence, and that conviction will also make it illegal for him to possess firearms. Even if his conviction did not make it illegal for him to possess firearms, his drug distribution activities would make it illegal under the counts in violation of Title 18, United States Code, Section 924(c). Evidence of firearm possession on one occasion is admissible to show it on another occasion in the Eighth Circuit, further tying together the felon-in-possession counts with the 924(c) counts. *United States v. Walker*, 470 F.3d 1271, 1274 (8th Cir. 2006) The evidence is inextricably intertwined and would not even be subject to the prohibitions of Rule 404(b) and is necessary to complete the story of the crime. In summation, the standards of *United States v. Robaina*, 39 F.3d 858, 861 (8th Cir. 1994) are satisfied because the offenses occurred on the same day and the evidence is entirely overlapping.

B. The Evidence from Count I through V is from the Same Act or Transaction and is Part of a Common Scheme or Plan.

Brun is in the same position as the defendant in *Colbert* because his drug distribution and possession led him to violate his probation, resulting in the arrest warrants that caused him to: (1) assault an officer; (2) resist and evade an arrest; and (3) possess firearms out of drug driven

paranoia and a need to protect his controlled substances and the money he made from selling them. The *Colbert* Defendant failed on his challenges to joinder of his firearms count with his controlled substance counts because the *Colbert* Panel found that all of the actions arose from his participation in a cocaine distribution conspiracy. *Colbert*, 828 F.3d at 728. The guns aided Colbert's drug distribution, to put it more simply. Here, the firearms aided the drug distribution and motivated the assault on the Task Force Officer. The standard set out in *Colbert* by the Eighth Circuit was that charges that arise from the same act are properly joined, and here these charges arose from Brun's decision to start violating the terms of his felony probation with drug use and distribution. Brun needed firearms as a consequence, and the firearm in his possession drove him to resist arrest while he was in possession of the weapon and to drive his vehicle into Officer Pratt's to buy himself time to hide it.

As the United States previously mentioned, the weapons, drugs and assault evidence would be admissible in separate trials, another consideration under this type of joinder.

Finally, there is a logical and temporal connection amongst all of the charged offenses, and that is further reason and support for joinder of all of the charged offenses in one trial. Logical and temporal connections are critical measures of whether offenses are part of a common plan in the Eighth Circuit. *See United States v. Johnson*, 462 F.3d 815, 822 (8th Cir. 2006); *United States v. Midkiff*, 614 F.3d 431, 439 (8th Cir. 2010). Here, Brun's firearm possession and drug distribution are logically linked with his desire to resist arrest due to his probationary status and his choice to drive his vehicle into Officer Pratt's vehicle in an to attempt to hide his firearm. It is all contemporaneous, and it is all linked together. This all supports joinder.

C. The Evidence from Counts I and II is Admissible in the Trial of Count III – V, so the Defendant Cannot Demonstrate Severe Prejudice.

Brun's arrest and the subsequent search of his home are inextricably intertwined events, and the evidence of one set of facts is necessary to tell the story of the other set of facts. Brun cannot demonstrate severe prejudice when the evidence that underlies all of the counts on his indictment would be admissible at trial on the remaining counts. The Defendant bears the burden on this motion, and he must demonstrate that he would suffer "compelling or severe prejudice." *United States v. Warfield*, 97 F.3d 1014, 1018 (8th Cir. 1996). If Brun did not have a warrant for violation of his probation terms for drug offenses, then he would not have had to resist, evade, and assault Task Force Officer Pratt during his attempt to take Brun into custody and question him about narcotics distribution. The conviction for which Brun was on probation is admissible to show his absence of mistake and knowledge of controlled substances. Officer Pratt was investigating him for methamphetamine distribution, and Nicole Corcoran possessed methamphetamine that Brun distributed to her that was found in the search of his residence. The probation violation is intertwined and inseparable from the circumstances of his arrest and the assault, which led to the recovery of the firearm both at the scene and back at Brun's residence. Brun cannot demonstrate prejudice.

D. The Law Overwhelmingly Favors Joinder

The presumption against severance is strong, and the possibility that a defendant's chances for acquittal may be better in separate trials is an insufficient justification for severance. *United States v. Delpit*, 94 F.3d 1134, 1143 (8th Cir. 1996). The Eighth Circuit rationale for the presumption in favor of a joint trial is because "a joint trial 'gives the jury the best perspective on all of the evidence and therefore increase[s] the likelihood of a correct outcome.'" *United States v. Darden*, 70 F.3d 1507, 1528 (8th Cir. 1995) (quotation omitted). The jury would be able to hear

and consider all of that evidence one time and apply it to all of the Defendants, and that is a key consideration for joinder in the Eighth Circuit. *See United States v. Darden*, 70 F.3d 1507, 1528 (8th Cir. 1995). Judicial resources are significantly impacted by the severance of properly joined counts. It would unnecessarily exhaust the District Court's resources to require multiple trials in this matter.

**CONCLUSION**

The Defendant did not meet his burden to demonstrate either that joinder of offenses was improper under Rule 8(a), or that even if it was proper joinder, he would still be severely prejudiced by the joinder of the offenses under Rule 14. His burden is a heavy one. The offenses were properly joined under Rule 8(a) for the reasons cited in this brief. There can be no severe prejudice from the joinder of the offenses in the Superseding Indictment because evidence from all of the counts would be admissible at a trial on the remaining counts.

For all of these reasons, the United States respectfully requests that the Defendant's motion for severance be denied in its entirety.

Respectfully Submitted:

UNITED STATES OF AMERICA,
Plaintiff

JOSEPH KELLY
United States Attorney
District of Nebraska

By: s/ *Lesley Woods*
LESLEY WOODS, TX #24092092
Assistant United States Attorney
1620 Dodge St., Suite 1400
Omaha, NE 68102
402-661-3700
lesley.woods@usdoj.gov

CERTIFICATE OF SERVICE

I hereby certify that on September 18, 2020, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which sent notification of such filing to all registered participants. I also hereby certify that a copy of the same was served by regular mail, postage prepaid, to the following non-CM/ECF participants: None.

*s/ Lesley Woods*
Assistant U.S. Attorney